Caruthers, J.,
delivered the opinion of the Court.
James James, as present trustee of Grainger county, moved against James H. Peck, his predecessor, for the balance of the common school money remaining in his hands.
This bill was filed by Peck, claiming a right to be exonerated from liability for so much of the amount reported against him, as consists of bank notes which have become valueless since he received them, except so far as to pay over to his successor the identical bank notes received; and he prays that his successor be compelled to accept them in discharge of their nominal amount.
The case made by the bill is : that upon the warrant of the Comptroller for the common school fund due to the county of Grainger, for the year 1856, the Branch of the Bank of Tennessee, at Rogersville, paid over to him twelve or fourteen hundred dollars upon the “ Bank of East Tennessee,” which was then believed by him to be good and solvent, and its bills were everywhere current and bankable; that he notified the common school commissioners of his county, that he had the money, and paid it out to them according to law, as fast as *77 they applied for it, and was guilty of no neglect, or delay, in appropriating and paying it out as directed by the law; that while thus engaged in discharging the duties incumbent on him, by the statutes regulating the common school fund, the hank failed, when he still had in his hands $680 of the said notes, which are now worthless. The prayer is, that his successor, the defendant, be compelled to receive the said notes, and that he he allowed a credit for that amount.
The demurrer of the defendant was overruled, and he refusing to answer or make further defence, a final decree was made in pursuance of the prayer of the bill.
We think the principle settled in the case of the Governor v. McEwen, 5 Hum., 265, must govern this. It is held in that case, that “ the measure of fiduciary responsibility, in view of a Court of Chancery will be the same, whether arising from public or private relations.” And that in the absence of bad faith, the same fair and equitable principles of adjustment which govern the subject of agency in general, will he applied to and regulate the accountability of public' agents. In that case McEwen as superintendent of public instruction, intrusted with the collection, custody and control of the common school fund, by the act of 1835, creating the office and fixing his duties, was allowed a credit for such circulating paper currency collected by him or his agents, which was received in good faith, then being current, but became worthless or depreciated by subsequent events. It would seem to be a hard rule upon the public agents, or trustees, to make them accountable for the failure of the banks, whose-notes they may have received at a time when such banks had good credit, and their notes circulating in all the channels of business and commerce, at par, with specie, and in fact then convertible into specie. If this were so, no one would hold such offices, or they would be driven to the inconvenient necessity of receiving nothing but gold and silver, which would be out of, and contrary to, the ordinary course of business, both public and private. In the case under consideration, and those of a similar character, where the fund was received from the financial agent of the State, the rule *78 of accountability insisted upon would be particularly harsh and severe. Good men would be deterred from holding these important trusts, if such were the rules of law on the subject.
Sheriffs, and other collectors of the pnblic revenue, are required, by statute, to receive current bank notes, whether the tax be for common school, or other purposes. These trustees, and all others, receive them in their own business; and lawyers, clerks, and other agents, both public and private, demand nothing better, in the absence of special instructions. True, in all these cases, (except the collectors of taxes,) as well as the case before us, specie may be demanded, as there is no other lawful tender. But the question is as to his accountability if he does not.
The county trustees are required to keep the funds received for the county, safely, until it is paid out by him to the district common school commissioners for the purposes intended. But this does not imply that he is to use no diligence to guard against loss by the failure of banks, or otherwise. He will be held to fidelity and diligence in his trust, as well in this as in all other respects. In order to discharge himself in such a case, it will be incumbent upon him to show that he was vigilant in his trust to prevent the loss under all circumstances ; and, furthermore, to prove otherwise than by his own statements in his bill, that the notes for which he claims a credit are the same received by him in his trust.
If this is not required, the greatest fraiuls might be practiced by these public agents. All the bad notes in the neighborhood might be packed off upon the State. The bill is not sufficiently special on these points, and should have been answered by the defendant, upon the overruling of his demurrer, so as to have raised the proper issues of fact, and put the complainant upon the proof of his case. It is our duty to see that no injury.be done to this or any other public fund, by the inattention or connivance of those who succeed to a trust, and that a case for relief is fully made out; otherwise, the rule we adopt would be subject to very great abuse. The Chancellor should have made a reference to the master for a report *79 upon these material points, before a final decree. While we hold that the trustee should he relieved in the case we have stated, we think great particularity and strictness should he required by the Courts, in making out the case, to avoid impositions and frauds, and produce greater caution and care on the part of these and other public agents in the discharge of their duties. They should always he prepared to show the identity of the fund, and that they have been guilty of no want of vigilance in endeavoring to secure it, and by every reasonable means to save the public from loss. The notes should also be brought into Court with the bill, or upon an order, to be identified with reasonable certainty, and subject to its control. We are not to be understood as prescribing different rules of evidence in these cases from others, but only to require that the complainant shall make out his case to the full satisfaction of the Court, and that the Court shall see that the case is fully and fairly defended. We are not to be understood, either, as intimating that we see any thing -in this case to excite suspicion, but our remarks are intended to be general, for the promotion of the ends of justice, and the protection of this favored fund.
The State should have been made a party defendant, and that may be done by amendment when the case goes back.